BRADY–HAMILTON STEVEDORE COMPANY and Fireman's Fund Insurance Company, Petitioners,

v.

James R. HERRON, Jr. and Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.

No. 75–1538.

United States Court of Appeals, Ninth Circuit.

Jan. 23, 1978.

138

John R. Dudrey (argued), Portland, Or., for petitioners.

Raymond J. Conboy (argued), Portland, Or., Joshua T. Gillelan, II (argued), Washington, D. C., for respondents.

Petition to Review a Decision of the United States Department of Labor Benefits Review Board.

Before SNEED and KENNEDY, Circuit Judges, and POOLE,* District Judge.

KENNEDY, Circuit Judge:

Respondent Herron was injured in the course of his employment with Brady-Hamilton Stevedore Company (Brady-Hamilton). The accident occurred at Brady-Hamilton's facility at the Port of Longview, Washington. Herron filed a claim under the Longshoremen's and Harbor Workers' Compensation Act (Act), 33 U.S.C. § 901 *et seq.* (1970 & Supp. V 1975). Brady-Hamilton contested the claim, alleging that Herron's injury was not covered by the Act. The administrative law judge held that the Act did cover Herron's injury and awarded compensation. The Benefits Review Board (Board) affirmed the award, and Brady-Hamilton filed for review of the Board's order in this court pursuant to 33 U.S.C. § 921(c) (Supp. V 1975).[1] We affirm.

Brady-Hamilton is a contract stevedore which loads and unloads vessels using its own equipment. The equipment is stored and repaired in a building owned by Brady-Hamilton and known as a gear locker. The gear locker is located approximately 2,600 feet north of the edge of the Columbia River and 2,050 feet outside of the entrance gate of the Port of Longview. Two other stevedore companies maintain gear lockers adjacent to Brady-Hamilton's.

Nine days before his injury, Herron had been hired by Brady-Hamilton from the longshoremen's union hiring hall. He worked on a daily basis as a gear lockerman, responsible for repairing, maintaining, refueling, and inspecting the equipment.

housed in the gear locker, and for transporting it between the locker and the pier. These tasks required Herron to be aboard ships from time to time. When injured he was unloading steel plates from a pickup truck parked at the gear locker. The administrative law judge found that these plates were to be installed on a vessel in such a way that logs loaded on the vessel could be securely fastened to the plates.

The portions of the Act which determine the outcome of this case were significantly amended in 1972. Longshoremen's and Harbor Workers' Compensation Act Amendments of 1972, Pub.L.No.92–576, § 2, 86 Stat. 1251 (1972). The Act now provides coverage to "employees" injured "upon the navigable waters of the United States," as those terms and phrases are specially defined. The relevant portions of the Act provide:

> The term "employee" means any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harborworker including a ship repairman, shipbuilder, and shipbreaker, but such term does not include a master or member of a crew of any vessel, or any person engaged by the master to load or unload or repair any small vessel under eighteen tons net.

33 U.S.C. § 902(3) (Supp. V 1975).

> Compensation shall be payable under this chapter in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, or building a vessel). . . .

*Id.* § 903(a). The requirements for coverage set forth in the two paragraphs quoted are commonly called the status and situs

---

* Honorable Cecil Poole, United States District Judge for the Northern District of California, sitting by designation.

1. Brady-Hamilton's workmen's compensation insurance carrier, Fireman's Fund Insurance Company, joined its insured in this litigation and is co-petitioner.

requirements, respectively. Brady-Hamilton argues that neither requirement was satisfied in this case.

*Status*

Brady-Hamilton claims that Herron was not engaged in maritime employment when he was injured and that therefore he has not met the status requirement. The Company attacks the findings of the administrative law judge as to the intended use of the steel plates which Herron was unloading, urging that the plates did not relate to maritime employment. Conflicting testimony as to the intended use of the steel plates was presented at trial and we would be reluctant to overturn the findings of the administrative law judge.[2] We need not decide the question, however, since the argument made by Brady-Hamilton rests upon a misperception of the meaning of the status requirement.

In *Northeast Marine Terminal Co. v. Caputo*, 432 U.S. 249, 97 S.Ct. 2348, 53 L.Ed.2d 320 (1977), the Supreme Court held that one "whose employment is such that [he] spend[s] at least some of [his] time in indisputably longshoring operations" is a statutory employee. *Id.* at 273, 97 S.Ct. at 2362. The Court held that the text and the history of the 1972 amendments "demonstrate a desire to provide continuous coverage throughout their employment to these amphibious workers [longshoremen] who, without the amendments, would be covered only for part of their activity." *Id.*

Brady-Hamilton apparently concedes that Herron was engaged in longshoring activity during at least a portion of his working day. Moreover, the Board's conclusion that a gear lockerman's function is an "integral and essential part of the overall longshoring operations" (Record, vol. I, at 128) is supported by evidence in the record that Herron was required at times to work aboard ship and even in the hold at tasks directly related to loading and unloading cargo. To exclude Herron from cover-

age in the instant case would be to reinstate the same degree of "shifting and fortuitous coverage that Congress intended to eliminate." 432 U.S. at 274, 97 S.Ct. at 2363. We are directed by *Northeast Marine Terminal* to give effect to the remedial purpose of the Act by adopting a broad construction of the status requirement. Satisfaction of the status requirement does not depend upon the task which the employee was performing at the moment of injury. For these reasons we conclude that Herron meets the status test for coverage under the Act.

*Situs*

Situs and status must coincide before coverage will attach. Each test acts as a control upon the other so as to diminish the potential for undue expansion of coverage. Admittedly, neither test is precise, and cases will often arise which present questions of coverage that are difficult to resolve. But by operating coordinately, the status and situs tests fix coverage within somewhat more certain bounds than would be the case under either test alone. With these observations, we turn to the situs test as it applies to Herron's claim.

In order to satisfy the situs test, Herron's injury must have occurred upon the navigable waters of the United States, which are defined in the Act to include any "adjoining area customarily used by an employer in loading, unloading, repairing, or building a vessel." 33 U.S.C. § 903(a) (Supp. V 1975). Brady-Hamilton argues that the situs of Herron's injury did not adjoin navigable waters since its gear locker was not contiguous with the Columbia River.

While *Northeast Marine Terminal* is not dispositive of the situs question, the approach of the Court in interpreting the Act is instructive. The Court found that the 1972 amendments were motivated by two congressional purposes: (1) to recog-

---

**2.** The Board affirmed the findings of the administrative law judge. On review, these findings are controlling if supported by substantial evidence in the record considered as a whole. *Nardella v. Campbell Machine, Inc.*, 525 F.2d 46, 47–48 (9th Cir. 1975).

nize that modern cargo handling techniques have moved much of a longshoreman's work onto land, and (2) to provide continuous coverage to workers who would otherwise be covered for only part of their activities. 432 U.S. at 249, 97 S.Ct. 2348. We do not think that by adverting to specific changes in the nature of cargo-handling operations Congress intended to refuse coverage to those maritime workers who for reasons other than changes in cargo-handling techniques work farther away from the water's edge than they formerly did. In order to further Congress' goal of uniform coverage, the phrase "adjoining area" should be read to describe a functional relationship that does not in all cases depend upon physical contiguity. Consideration should be given to the following factors, among others, in determining whether or not a site, is an "adjoining area" under section 903(a): the particular suitability of the site for the maritime uses referred to in the statute; whether adjoining properties are devoted primarily to uses in maritime commerce; the proximity of the site to the waterway; and whether the site is as close to the waterway as is feasible given all of the circumstances in the case.

 All of the machinery and equipment in the Brady-Hamilton gear locker was used exclusively for loading and unloading vessels at the Port of Longview. Adjacent buildings were used as gear lockers by other companies. The administrative law judge found that:

> Expediency requires that a stevedore company's gear locker be located as close as possible to the dock area where the loading and unloading activities occur . . . . The land area abutting the water's edge can only accommodate a limited number of warehouses and other docking facilities that must of necessity be located as close as possible to the ships being loaded and unloaded. Bearing this in mind, I find that Brady-Hamilton's gear locker was located in as close proximity to the dock loading area as was feasible and as circumstances permitted.

(Record, vol. I, at 33). The facility here was used as an integral part of longshoring operations. Based on all of the foregoing, we hold that the injury occurred at a place within the situs requirements of the Act.

The Fifth Circuit reached a like conclusion in a similar case. *Texports Stevedore Co. v. Winchester,* 554 F.2d 245 (5th Cir. 1977) (per curiam). There a gear locker-man was injured in a gear locker located five blocks from the water's edge. The court held that the claimant met both the status and the situs requirements of the Act.

 Brady-Hamilton finally urges that coverage of Herron under the Act would exceed the power of Congress under the Constitution. Such contention is without merit. Congress has "paramount power to determine the maritime law which shall prevail throughout the country," *Detroit Trust Co. v. The Thomas Barlum,* 293 U.S. 21, 43, 55 S.Ct. 31, 38, 79 L.Ed. 176 (1934), including authority over maritime contracts. *Id.* at 48. The Supreme Court has suggested that Congress, if it so desired, could extend the Act's coverage to all longshoremen by exercising its power over maritime contracts. *Nacirema Operating Co. v. Johnson,* 396 U.S. 212, 215, 90 S.Ct. 347, 24 L.Ed.2d 371 (1969). *See Victory Carriers, Inc. v. Law,* 404 U.S. 202, 216, 92 S.Ct. 418, 30 L.Ed.2d 383 (1971). The facts of this case, however, do not require us to examine the outermost limits of Congress' legislative authority under its admiralty and maritime jurisdiction. We hold that coverage of Herron under the Act is within that jurisdiction by reason of the longshoring character of the work performed and the extent to which choice of the site was governed by considerations of the maritime economy.

The petition is denied; the order below is affirmed.