**WEYHER/LIVSEY CONSTRUCTORS, INCORPORATED; Wausau Insurance Companies, Petitioners,**

v.

**Thomas C. PREVETIRE; Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.**

**No. 93–1819.**

United States Court of Appeals, Fourth Circuit.

Argued April 11, 1994.

Decided June 29, 1994.

**ARGUED:** Daniel Roger Lahne, Knight, Dudley, Dezern & Clarke, P.L.L.C., Norfolk, VA, for petitioners. Robert Elliott Walsh, Rutter & Montagna, Norfolk, VA; Michael Scott Hertzig, Office of the Sol., U.S. Dept. of Labor, Washington, DC, for respondents. **ON BRIEF:** Thomas S. Williamson, Jr., Sol. of Labor, Carol A. De Deo, Assoc. Sol., Janet R. Dunlop, Counsel for Longshore, Office of the Sol., U.S. Dept. of Labor, Washington, DC, for respondents.

Before MURNAGHAN, Circuit Judge, SPROUSE, Senior Circuit Judge, and HARVEY, Senior United States District Judge for the District of Maryland, sitting by designation.

Reversed by published opinion. Judge MURNAGHAN wrote the opinion, in which Senior District Judge ALEXANDER HARVEY, II joined. Senior Judge SPROUSE wrote a dissenting opinion.

## OPINION

MURNAGHAN, Circuit Judge:

Thomas C. Prevetire was injured on the job and filed a claim for disability benefits under the Longshore and Harbor Workers' Compensation Act ("the LHWCA" or "the Act"), 44 Stat. (part 2) 1424, as amended, 33 U.S.C. §§ 901–950. An administrative law judge denied his claim, but the Benefits Review Board of the United States Department of Labor reversed. The employer now petitions for review of the Board's decision and order.

### I

Respondent Prevetire was employed as a pipe fitter by petitioner, Weyher–Livsey Constructors, Inc.,[1] when it was building a

---

1. The other petitioner, Wausau Insurance Co., is the workers' compensation carrier for Weyher– Livsey.

power plant on the premises of the Norfolk Naval Shipyard in Portsmouth, Virginia. As the project was originally conceived, all of the steam and most of the electricity produced at the plant would be used at the shipyard for its day-to-day operations, and the surplus electrical power produced at the plant would be sold commercially to consumers outside the shipyard.[2]

While working at the construction site, Prevetire suffered an injury that resulted in a permanent partial disability to the ring finger of his left hand. He notified Weyher–Livsey of his injury and filed a claim for disability compensation under the LHWCA. Weyher–Livsey agreed to compensate Prevetire for his disability under the Virginia state workers' compensation act, but refused to pay the higher disability compensation benefits that the LHWCA would require.[3]

The administrative law judge (ALJ) issued a decision denying Prevetire's claim on the ground that he was not a "maritime employee" covered by the LHWCA. He found that the skills Prevetire used in building the power plant were not distinctly maritime, and the purpose of his employment lacked "a 'realistically significant relationship to' traditional maritime activity involving navigation and commerce on navigable waters."

Prevetire appealed to the Benefits Review Board. The Board reversed the ALJ's decision on the grounds that its reliance on the "significant relationship" test was invalid in light of the Supreme Court's decision in *Chesapeake & Ohio Railway Co. v. Schwalb,* 493 U.S. 40, 110 S.Ct. 381, 107 L.Ed.2d 278 (1989), and that its reliance on the absence of a maritime character of the "skills used" was also erroneous because nonmaritime skills applied to a maritime purpose constitute maritime employment. The Board also held that building structures and machinery for shipyard work is an "essential element" of building and repairing ships, and that the construction of the power plant was essential to the shipyard's operations, including ship-

building and ship repair work, and thus constituted "maritime employment" under the Act. Weyher–Livsey timely petitioned for review of the Board's decision.

## II

### A

■ The Supreme Court has stated that the Benefits Review Board is not a policy-making agency and therefore its interpretations of the LHWCA are entitled to no special deference from the Courts of Appeals. *See Potomac Elec. Power Co. v. Director, Office of Workers' Compensation Programs,* 449 U.S. 268, 278 n. 18, 101 S.Ct. 509, 514 n. 18, 66 L.Ed.2d 446 (1980).

In the present case, the Solicitor of Labor has filed a brief on behalf of the Director of the Office of Workers' Compensation Programs of the Department of Labor (the "Director"), who, as one of the respondents here, supports Prevetire's broad interpretation of the Act. We do afford deference to the Director's interpretation of the LHWCA because he has policymaking authority with regard to the Act. *See Director, Office of Workers' Compensation Programs v. Newport News Shipbuilding & Dry Dock Co.,* 8 F.3d 175, 179 (4th Cir.1993) ("[W]e should respect a reasonable interpretation of the LHWCA by the Director.... Absent clear congressional intent as to the proper construction of the LHWCA, we must give deference to the Director's reasonable and permissible interpretation."); *Zapata Haynie Corp. v. Barnard,* 933 F.2d 256, 258–59 (4th Cir.1991) ("[T]his court defers to [the Director's] interpretation [of the LHWCA] unless it is unreasonable or contrary to Congressional intent."); *Newport News Shipbuilding & Dry Dock Co. v. Howard,* 904 F.2d 206, 208–09 (4th Cir.1990); *cf. Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984).

---

2. For at least the first year after the plant was built, however, the shipyard used all the electricity and steam produced by the plant.

3. There was no dispute as to *medical* benefits: Weyher–Livsey, as the employer, provided all medical benefits to which Prevetire would have been entitled under the LHWCA, 33 U.S.C. § 907.

As we explain below, the Director's construction of the LHWCA in the present case is both unreasonable and contrary to Congress' clear intent, as expressed in the Act's text and structure. In such a case, our duty is to enforce the will of Congress, notwithstanding the Director's interpretation.

### B

The LHWCA creates a comprehensive federal scheme to compensate a broad range of land-based maritime workers who are injured or killed on the job. *See Estate of Cowart v. Nicklos Drilling Co.,* — U.S. —, —, 112 S.Ct. 2589, 2592, 120 L.Ed.2d 379 (1992); *McDermott Int'l, Inc. v. Wilander,* 498 U.S. 337, 347, 111 S.Ct. 807, 813, 112 L.Ed.2d 866 (1991). Before 1972 the LHWCA covered only workers injured on the actual "navigable waters of the United States (including any dry dock)." 44 Stat. (part 2) 1426. The 1972 Amendments to the LHWCA extended the Act's coverage by replacing what had been a rather restrictive "situs" test of eligibility for compensation with a broader "situs" test that allows compensation for any "employee" whose "disability or death results from an injury occurring upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel)." 33 U.S.C. § 903(a).

"[W]ith the definition of 'navigable waters' expanded by the 1972 Amendments to include such a large geographical area, it became necessary to describe affirmatively the class of workers Congress desired to compensate." *Northeast Marine Terminal Co. v. Caputo,* 432 U.S. 249, 264, 97 S.Ct. 2348, 2357, 53 L.Ed.2d 320 (1977); *accord Director, Office of Workers' Compensation Programs v. Perini North River Assocs.,* 459 U.S. 297, 317, 103 S.Ct. 634, 647, 74 L.Ed.2d 465 (1983). Specifically, Congress added a "status" test restricting the Act's coverage to "person[s] engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harbor-worker including a ship repairman, shipbuilder, and ship-breaker." 33 U.S.C. § 902(3). Clauses (A) through (H) of § 902(3) enumerate several categories of persons who are expressly *not* covered "employees," such as clerical workers and persons employed by waterfront restaurants, retail stores, and museums. *Id.* § 902(3)(A)-(H).[4] To be eligible for compensation, a person must be an employee as defined by § 902(3) who sustains an injury on the situs defined by § 903(a). *See Schwalb,* 493 U.S. at 45, 110 S.Ct. at 384. The requirements of §§ 902(3) and 903(a) are liberally construed to favor coverage under the LHWCA. *See Caputo,* 432 U.S. at 268, 97 S.Ct. at 2359.

In the present case, there is no dispute that the situs test is satisfied. The sole disputed issue is whether Prevetire, a ship-

---

4. Section 902(3) provides, in full:

(3) The term "employee" means any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harbor-worker including a ship repairman, shipbuilder, and ship-breaker, but such term does not include—

(A) individuals employed exclusively to perform office clerical, secretarial, security, or data processing work;

(B) individuals employed by a club, camp, recreational operation, restaurant, museum, or retail outlet;

(C) individuals employed by a marina and who are not engaged in construction, replacement, or expansion of such marina (except for routine maintenance);

(D) individuals who (i) are employed by suppliers, transporters, or vendors, (ii) are temporarily doing business on the premises of [a maritime] employer ..., and (iii) are not engaged in work normally performed by employees of that employer under [the Act];

(E) aquaculture workers;

(F) individuals employed to build, repair, or dismantle any recreational vessel under sixty-five feet in length;

(G) a master or member of a crew of any vessel; or

(H) any person engaged by a master to load or unload or repair any small vessel under eighteen tons net;

if individuals described in clauses (A) through (F) are subject to coverage under a State workers' compensation law.

Indisputably, Prevetire fell within none of the exclusions specified in clauses (A) through (H) of § 902(3), so it remains necessary to decide whether he was "engaged in maritime employment."

yard power-plant construction worker, was a "person engaged in maritime employment" within the meaning of § 902(3). Although the statute expressly provides a few examples of a "person engaged in maritime employment"—a longshoreman, a ship repairman, a shipbuilder, and so forth—it sets forth no general definition of "maritime employment."

The Supreme Court has repeatedly held that, aside from the occupations specifically named in § 902(3), "land-based activity occurring within the § 903 situs will be deemed maritime *only if it is an integral or essential part of loading or unloading a vessel.*" *Schwalb,* 493 U.S. at 45–46, 110 S.Ct. at 384–385 (emphasis added) (citing three Supreme Court precedents). In *Schwalb,* the Court held "that employees who are injured while maintaining or repairing equipment essential to the loading or unloading process are covered by the Act" because they "are engaged in activity that is an integral part of and essential to those overall processes." *Id.* at 47, 110 S.Ct. at 385.

## C

■ The respondents in the present case (Prevetire and the Director) invite us to extend *Schwalb* by holding that a pipe fitter who was employed in only the *construction* of a power plant (as distinguished from its later operation or maintenance) was engaged in activity that was an integral or essential part of loading or unloading a vessel and hence was "engaged in maritime employment" *simply because the power plant being built would eventually provide steam and electricity to shipbuilding and ship-repair operations.* Because such an expansive view of maritime employment is inconsistent with the LHWCA and its 1972 Amendments, as interpreted in a long line of Supreme Court decisions, we decline respondents' invitation, grant Weyher–Livsey's petition, and reverse the Benefits Review Board's decision.

Justice White, writing for the Court in *Herb's Welding, Inc. v. Gray,* 470 U.S. 414,

105 S.Ct. 1421, 84 L.Ed.2d 406 (1985), explained that the 1972 Amendments'

> expansion of the definition of navigable waters to include rather large shoreside areas necessitated an affirmative description of the particular employees working in those areas who would be covered. This was the function of the maritime employment requirement. But Congress did not seek to cover all those who breathe salt air.

*Id.* at 423, 105 S.Ct. at 1427. Justice White's opinion for the Court went on to hold that Robert Gray, the LHWCA claimant, was not "engaged in maritime employment," within the meaning of § 902(3). *Herb's Welding,* 470 U.S. at 427, 105 S.Ct. at 1431.[5]

Prevetire's claim is significantly weaker than Gray's claim, which the Court rejected. Both Gray and Prevetire were construction workers: Gray was a welder who built and replaced pipelines, Prevetire a pipe fitter who helped build and replace a power plant. Neither man built or repaired ships. Neither man loaded or unloaded ships. Neither man repaired or maintained equipment used in the loading or unloading process. Gray's welding work and Prevetire's pipe fitting were both far removed from traditional LHWCA activities, such as longshoring. Neither welding nor pipe fitting is an inherently maritime task. Both jobs are also performed on land, and their nature is not significantly altered by the marine environment. *Compare Herb's Welding,* 470 U.S. at 416, 425, 105 S.Ct. at 1423, 1428.

Gray, however, worked on a fixed *offshore* oil-drilling platform. He commuted to and from his workplace by boat, and even loaded and unloaded his welding gear onto a boat. He regularly traveled back and forth over water among the rigs in the oil field. And he frequently faced the notorious maritime hazards associated with offshore rigs. *See id.* at 428–50, 105 S.Ct. at 1429–41 (Marshall, J., dissenting). In short, Gray did "far more than just 'breathe salt air.'" *Id.* at 449, 105 S.Ct. at 1440 (quoting the majority opinion,

**5.** In *Herb's Welding,* as in the present case, the Director participated as a respondent and argued for a broad interpretation of § 902(3).

470 U.S. at 423, 105 S.Ct. at 1427). Yet Gray was held not qualified for LHWCA benefits.

The maritime activities of Prevetire, on the other hand, barely extended beyond "breathing salt air." Indeed, the only connection between his occupation and maritime activity was the one highlighted by the respondents: power from the plant that Prevetire helped to build would eventually be used by the shipyard. Obviously, if the plant had been built just outside the shipyard's boundary rather than just inside it (or if the electricity generated by the plant had been consumed outside the shipyard), Prevetire's job would not have changed one iota.[6]

The nature of a particular job is, of course, defined in part by its location, see Herb's Welding, 470 U.S. at 426, 105 S.Ct. at 1428; but to classify Prevetire's employment as maritime, merely because the power plant that he was helping to construct would lie on the seaward side of the shipyard's boundary, would blur together the "situs" and "status" requirements which Congress intended to make distinct. Indeed, it is difficult to imagine how any employee working full-time at the Norfolk Naval Shipyard could be deemed *non*-maritime if Prevetire, the shipyard power-plant builder, were classified as a maritime employee. Thus, the respondents' suggested construction of the LHWCA would effectively read the "status" requirement out of the Act. Cf. id.; Humphries v. Director, Office of Workers' Compensation Programs, 834 F.2d 372, 375 (4th Cir.1987) ("Were we to read the ... requirement so broadly as to embrace this claim, ... we would come perilously close to eliminating it entirely."), cert. denied, 485 U.S. 1028, 108 S.Ct. 1585, 99 L.Ed.2d 900 (1988). Because Congress did not intend to extend LHWCA coverage to every employee who works at a shipyard regardless of whether the work is maritime employment, Prevetire was not covered, for we hold that he was not "engaged in maritime employment" within the meaning of the Act, 33 U.S.C. § 902(3).

**6.** Respondents' argument is further weakened by the fact that the power plant was not even dedicated to shipyard purposes: it was also designed

### III

We grant the employer's petition for review, set aside the decision and order of the Benefits Review Board, and deny Prevetire's claim for disability benefits under the LHWCA. His workers' compensation rights under Virginia law will not be adversely affected.

*REVERSED.*

SPROUSE, Senior Circuit Judge, dissenting:

I respectfully dissent. I agree with the majority that the sole dispute is whether Prevetire was a "person engaged in maritime employment" within the meaning of 33 U.S.C. § 902(3). In my view, however, a proper reading of Chesapeake & Ohio R. Co. v. Schwalb, 493 U.S. 40, 110 S.Ct. 381, 107 L.Ed.2d 278 (1989), requires a holding that Prevetire was engaged in maritime work.

As the majority points out, the Schwalb Court, in discussing employees who maintained and repaired equipment essential to the loading or unloading process, held that such employees are covered by the Act because they "are engaged in activity that is an integral part of and essential to those overall processes." Schwalb, 493 U.S. at 47, 110 S.Ct. at 385. In my view, the construction of a power plant at the shipyard is also essential to the shipyard's maritime operations, for without electricity and steam, no shipbuilding or repair work could be performed. Prevetire's construction work on the power plant, therefore, was a link in the shipbuilding and ship repair process that was just as essential as the maintenance and repair of machinery used in that process. For this reason, I believe the majority's reliance on Herb's Welding, Inc. v. Gray, 470 U.S. 414, 105 S.Ct. 1421, 84 L.Ed.2d 406 (1985), is misplaced. There, the decision denying coverage turned on the Court's view that neither the offshore search for oil and gas, nor the oil industry's use of offshore platforms in that process, had any relation to one of the Act's primary purposes—the protection of shipyard workers whose activities affect the load-

to produce surplus electricity that could be sold to Virginia Power and used commercially by consumers throughout southeastern Virginia.

ing or unloading of ships. Here, however, the furnishing of electrical power is closely related to maritime work performed in the shipyard.

My colleagues recognize, as they must, that § 902(3)'s definition of maritime employees is to be liberally construed. *Northeast Marine Terminal Co. v. Caputo*, 432 U.S. 249, 268, 97 S.Ct. 2348, 2359, 53 L.Ed.2d 320 (1977). The rule may very well be one which is often employed by judicial writers, perhaps including the present dissenter, when it matches their already matured decisions. Nonetheless, I believe that the issue of coverage *vel non* in this case is at least a close issue where the liberality rule would tilt the balance in favor of coverage.

In a similar vein, contrary to the majority, I would defer to the legal position of the Director, maintained since at least 1977, that construction work of this type is covered maritime employment. *See* LHWCA Program Memorandum No. 58, United States Dept. of Labor (Aug. 10, 1977). Congress has not spoken directly on the issue we consider, and one must wonder why, if the textual structure of the Act is so clear, the Supreme Court needed to go to such lengths in *Schwalb* and *Gray* to interpret Congress' intent regarding whether employees in divergent circumstances are maritime employees.

In my view, the Supreme Court's decision in *Schwalb* is broad enough to support the Director's view. Furthermore, there have been divergent results in decisions of the circuit courts of appeals on parallel issues. These factors, along with the congressional silence on the meaning of § 902(3) as it relates to construction work on shipyard facilities, make it difficult for me to accept that the Director's position is unreasonable.