149 F.3d 307
 CLINCHFIELD COAL COMPANY, Petitioner,
v.
Everett HARRIS; Director, Office of Workers' Compensation
Programs, United States Department of Labor, Respondents.
JEWELL RIDGE COAL CORPORATION, Petitioner,
v.
Cleo JACKSON; Director, Office of Workers' Compensation
Programs, United States Department of Labor, Respondents.
JEWELL RIDGE COAL CORPORATION, Petitioner,
v.
Leona VANDYKE, widow of Ulysses VanDyke; Director, Office
of Workers' Compensation Programs, United States
Department of Labor, Respondents.
 Nos. 97-2155, 97-2161, 97-2163.
 United States Court of Appeals,
Fourth Circuit.
 Argued June 3, 1998.
Decided July 16, 1998.
 
 ARGUED: Michael Francis Blair, Penn, Stuart & Eskridge, Abingdon, Virginia, for Petitioners. Jill M. Otte, United States Department of Labor, Washington, DC, for Respondents. ON BRIEF: Marvin Krislov, Deputy Solicitor for National Operations, Donald S. Shire, Associate Solicitor for Black Lung Benefits, Christian P. Barber, Counsel for Appellate Litigation, United States Department of Labor, Washington, DC, for Respondent Director.
 Before MURNAGHAN and ERVIN, Circuit Judges, and PHILLIPS, Senior Circuit Judge.
 Affirmed by published opinion. Judge ERVIN wrote the majority opinion, in which Senior Judge PHILLIPS joined. Judge MURNAGHAN wrote a concurring opinion.
 OPINION
 ERVIN, Circuit Judge:
 
 
 1
 Clinchfield Coal Company and Jewell Ridge Coal Corporation ("the Employers") appeal the Benefits Review Board's decisions to award attorney's fees against them for legal work that was done before they controverted their employees' claims for benefits. Everett Harris, Cleo Jackson, and Leona VanDyke ("the Claimants") were awarded benefits under the Black Lung Benefits Act, 30 U.S.C. §§ 901-45 (1994), and the Benefits Review Board ("BRB"), reversing longstanding precedent, awarded their attorneys fees for precontroversion work.
 
 
 2
 The issue in this case is a purely legal one--the interpretation of the fee-shifting provision in black lung cases. In all three cases on appeal, the Director, Office of Workers' Compensation Programs ("the Director"), made an initial finding that the Claimants were not eligible for black lung benefits. Each claimant then employed an attorney who began to do legal work before the employer controverted the claim. In all three cases, the employer eventually controverted the claim and an ALJ or the BRB subsequently awarded benefits to each claimant. The question in this consolidated appeal is whether the regulation implementing the statute allows the Claimants' attorneys to receive fees for pre-controversion work. Giving proper deference to the Director's interpretation of the fee-shifting provision, we hold that the regulation allows a successful claimant to receive pre-controversion attorney's fees, but only for work accomplished by an attorney after the Office of Workers' Compensation Programs ("OWCP") has made an initial determination that the claimant is ineligible for benefits. Subject to that interpretation of the regulation, we affirm the judgments of the BRB.
 
 I.
 
 3
 We have jurisdiction over these three cases pursuant to the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 921(c) (1994), as incorporated by the Black Lung Benefits Act, 30 U.S.C. § 932(a) (1994). When we are reviewing the OWCP's interpretation of its own regulations, the OWCP's interpretation is entitled to "substantial deference" and will be sustained unless it is plainly erroneous or inconsistent with the regulation. Mullins Coal Co. v. Director, OWCP, 484 U.S. 135, 159-60, 108 S.Ct. 427, 98 L.Ed.2d 450 (1987); Lester v. Director, OWCP, 993 F.2d 1143, 1145 (4th Cir.1993). The BRB is not a policymaking agency; its statutory interpretations are not entitled to any special deference from the courts. Potomac Elec. Power Co. v. Director, OWCP, 449 U.S. 268, 278 n. 18, 101 S.Ct. 509, 66 L.Ed.2d 446 (1980).
 
 II.
 
 4
 Section 422(a) of the Black Lung Benefits Act, 30 U.S.C. § 932(a) (1994), incorporates the attorney's fee provision of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 928(a) (1994). Pursuant to its authority to implement a structure for administering black lung benefits, the Department of Labor* has adopted the following regulation with regard to attorney's fees in black lung cases.
 
 
 5
 If an operator declines to pay any benefits on or before the 30th day after receiving written notice of its liability ... and the person seeking benefits shall thereafter have utilized the services of an attorney in the successful prosecution of the claim, there shall be awarded ... a reasonable attorney's fee....
 
 
 6
 20 C.F.R. § 725.367 (1997) (emphasis added).
 
 
 7
 For almost 20 years, the BRB has interpreted this provision to exclude pre-controversion fees, see, e.g., Baker v. Todd Shipyards Corp., 12 Ben. Rev. Bd. Serv. (MB) 309 (1980); Jones v. Chesapeake & Potomac Tel. Co., 11 Ben. Rev. Bd. Serv. (MB) 7 (1979), and that interpretation was upheld by this court in Kemp v. Newport News Shipbuilding & Dry Dock Co., 805 F.2d 1152 (4th Cir.1986). This interpretation attaches special significance to the use of the word "thereafter," which distinguishes this fee-shifting provision from the fee-shifting scheme for § 1983 and Title VII claims. Cf. 42 U.S.C. § 1988 (1994) ("[T]he court ... may allow the prevailing party ... a reasonable attorney's fee...."); 42 U.S.C. § 2000e-5(k) (same). This limitation on fee-shifting in longshore and black lung claims is consistent with Congress's desire that cases in these contexts "be resolved in the first instance without the necessity of relying on assistance other than that provided by the Secretary of Labor." Kemp, 805 F.2d at 1153.
 
 
 8
 In the cases before us, the BRB has performed an abrupt about-face Reversing its own clearly established precedent, the BRB awarded the Claimants attorneys' fees for pre-controversion work. The BRB justified its departure from precedent by relying on the Supreme Court's decisions in Hensley v. Eckerhart, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), and City of Burlington v. Dague, 505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992). The BRB held that Hensley and Dague compelled the Board to reconsider this question and, specifically, to determine whether or not it was "reasonable" to award pre-controversion fees. Finding that the entire fee requested by each Claimant was reasonable, the BRB awarded the Claimants their full attorneys' fees, including fees for precontroversion work.
 
 
 9
 The cases relied upon by the BRB, however, are inapposite to the determination of whether the regulation at issue allows the award of pre-controversion fees. Hensley and Dague flesh out the word "reasonable" in federal fee-shifting statutes, indicating generally that the "lodestar" amount (the number of hours worked on a case times a reasonable hourly rate) is the baseline for determining the reasonableness of any fee. See Hensley, 461 U.S. at 433, 103 S.Ct. 1933; Dague, 505 U.S. at 562, 112 S.Ct. 2638. All the parties to this consolidated appeal agree that those decisions are inapposite to this case, which involves an interpretation of different statutory language--the word "thereafter" rather than "reasonable." See Petitioners' Br. at 13; Respondents' Br. at 25. We agree with the parties that the BRB's reliance on Hensley and Dague is misplaced.
 
 
 10
 The Director suggests, however, that the BRB's decision can be affirmed on an alternative ground. The Director argues that the award of pre-controversion attorney's fees should depend on whether the OWCP, in its initial determination of benefits, accepts or denies the claim: if the OWCP initially denies benefits, then a claimant may recover pre-controversion attorney's fees if the claim is ultimately successful; if the OWCP initially approves benefits, then the claimant may not receive pre-controversion attorney's fees, even if the employer unsuccessfully controverts the claim.
 
 
 11
 This interpretation of the statute assumes that the policy behind the legislation "focuses on the point at which the adversarial relationship arises." Respondents' Br. at 28. According to the Director, that point obviously arises when the employer controverts an employee's claim, but in the case in which the OWCP initially denies a claim, "the [employer]'s concurrence is viewed as retroactive to the agency denial since it merely ratifies the [OWCP]'s action." Id. In other words, when the OWCP's initial determination is to deny a claim, it is inevitable that the employer will controvert any subsequent claim for benefits before an ALJ. "[I]f the [OWCP] determines that the evidence of record is insufficient to satisfy claimant's burden of proof, there is every reason to expect that the employer will agree and controvert the claim." Id. In these "initial-denial" cases, the Director believes that an attorney's pre-controversion work deserves compensation because an adversarial relationship arises between the employer and the claimant at the moment the OWCP determines that the claimant is ineligible for benefits.
 
 
 12
 By contrast, when the OWCP initially decides to award benefits to a claimant, the Director believes that "there is no reason for the claimant to seek professional assistance until the employer registers its disagreement." Id. It appears reasonable to expect that a claimant who has "won" in the OWCP determination will not require the assistance of counsel unless his employer chooses to controvert the OWCP's award. In the Director's parlance, no adversarial relationship exists between the claimant and the employer in "initial-award" cases until the employer decides that it will controvert the benefits award.
 
 
 13
 As we have noted, our review of an agency's interpretation of its own regulation is limited to a determination of whether the interpretation is plainly erroneous or inconsistent with the express language of the regulation. The Director's position, as articulated above, is a reasonable and commonsense interpretation of an ambiguous fee-shifting scheme. While the BRB's about-face on this question and its misplaced reliance on Hensley and Dague are some cause for concern, these concerns are not enough to outweigh our belief that the Director's interpretation is consistent with the regulation. The Director's interpretation of the regulation is eminently reasonable and fully merits the "substantial deference" we owe it.
 
 
 14
 The Employers argue that the Director's interpretation is contrary to the plain language of the regulation. Their argument is supported by the fact that the BRB, for almost 20 years, interpreted the underlying statute in a manner consistent with the Employers' interpretation. The Director concedes, as he must, that the Employers' reading of the regulation, which would preclude the award of any pre-controversion fees, is a reasonable one. Respondents' Br. at 30. But in order to succeed in this court, the Employers must show that the Director's interpretation of the regulation is irreconcilable with the text of the regulation. Such is the Employers' burden despite our holding in Kemp and the fact that, since Kemp, the Director has changed his interpretation of the statute. See De Osorio v. INS, 10 F.3d 1034, 1042 (4th Cir.1993) (holding that "an agency is allowed to change its interpretation as long as its position is reasonable and does not conflict with congressional intent"). As we noted in Kemp, this statutory fee-shifting scheme is "ambiguous," see Kemp, 805 F.2d at 1153, and the Director's new interpretation appears to resolve the ambiguity in a reasonable and commonsense manner.
 
 
 15
 The Employers also point out that in January 1997 the Secretary of Labor proposed a change in the regulation at issue that would require an employer only to pay post-controversion attorney's fees. See 62 Fed.Reg. 3337-3435 (Jan. 22, 1997). The language of the proposed regulation eliminates the ambiguity that currently exists in the regulation and is consistent with the interpretation of the present regulation for which the Employers argue in this appeal. It is indeed awkward that the government opposes the Employers' interpretation in the cases before us while simultaneously proposing a regulation that is in accord with the Employers' position. Again our task is not to determine whether the Director's position is the most reasonable or logical, but rather whether the interpretation is plainly erroneous. Whatever position the Department of Labor chooses to adopt under its authority to engage in formal rulemaking, it does not render its interpretation of the current regulation unreasonable or inconsistent with the regulation in its present form.
 
 III.
 
 16
 In sum, we hold that the decision whether to award precontroversion attorney's fees depends on whether the OWCP, in its initial determination of whether a claimant is entitled to benefits, awards or denies benefits. Pre-controversion fees should be awarded only in those cases in which the OWCP makes an initial determination that a claimant be denied black lung benefits. Since all three of these cases clearly fall into that category, these awards of precontroversion fees are appropriate and, therefore, the decisions of the BRB are accordingly affirmed.
 
 AFFIRMED
 
 17
 MURNAGHAN, Circuit Judge, concurring in the judgment:
 
 
 18
 I accept the Director's interpretation of 33 U.S.C. § 928 that an employer is liable for pre-controversion attorneys' fees, but only for services performed after the Office of Workers' Compensation Programs recommended that the claimant was not eligible for benefits. Great deference is owed to the Director of the Office of Workers' Compensation Programs when interpreting provisions regarding which he has policymaking authority. See Weyher/Livsey Constructors, Inc. v. Prevetire, 27 F.3d 985, 987 (4th Cir.1994) (explaining that we "afford deference to the Director's interpretation of the [Longshore and Harbor Workers' Compensation Act ("LHWCA"), which the Black Lung Benefits Act incorporates] because he has policymaking authority with regard to the Act"); Director, OWCP v. Newport News Shipbuilding and Dry Dock Co., 8 F.3d 175, 179 (4th Cir.1993) ("[W]e should respect a reasonable interpretation of the LHWCA by the Director.... Absent clear congressional intent as to the proper construction of the LHWCA, we must give deference to the Director's reasonable and permissible interpretation."), aff'd, 514 U.S. 122, 115 S.Ct. 1278, 131 L.Ed.2d 160 (1995). The interpretation proposed by the Director here is a fair and equitable one. While I acknowledge there are four significant arguments to be made against the Director's proposed interpretation, in the end I agree to defer to it.
 
 
 19
 First, I note that the Director's interpretation, as well as the Benefit Review Board's holding, imposes liability on the employer in contradiction to a rule consistently followed for eighteen years. See, e.g., Jones v. Chesapeake & Potomac Tel. Co., 11 Ben. Rev. Bd. Serv. (MB) 7 (1979), aff'd mem., 615 F.2d 1369 (D.C.Cir.1980). Both parties recognize that the given reasons for the Board's sudden about-face, that is, its citations to City of Burlington v. Dague, 505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992), and Hensley v. Eckerhart, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), are inapposite. Nor does the Board itself have a policymaking role that would justify such an abrupt reversal.
 
 
 20
 But the Director has such a role, and the Board's new ruling is closer to the position which the Director has advocated for many years. It approximates the rule that district directors have consistently followed even during the years in which the Board enforced its old, no-pre-controversion-fees position, and which is described in the OWCP Coal Mine (BLBA) Procedure Manual chapter 2-1404 at page 13. The Board did not adopt the Director's exact position, but it came close to doing so.
 
 
 21
 Second, I hesitate because we have previously affirmed the Board's holding that an employer was not liable for pre-controversion attorney's fees in Kemp v. Newport News Shipbuilding and Dry Dock Co., 805 F.2d 1152 (4th Cir.1986). We so held out of deference to the Benefits Review Board, stating, "If the Board's construction is 'sufficiently reasonable,' it must be accepted, even if it is not the only reasonable construction or the construction this court would have reached if originally deciding the question." Id. at 1153.[1]
 
 
 22
 That deference was misplaced, however. In Potomac Electric Power Co. v. Director, OWCP, 449 U.S. 268, 278 n. 18, 101 S.Ct. 509, 66 L.Ed.2d 446 (1980), the Supreme Court noted that "the Benefits Review Board is not a policymaking agency; its interpretation of the LHWCA thus is not entitled to any special deference from the courts." And in Weyher/Livsey Constructors, Inc., 27 F.3d at 987, we explained that "[t]he Supreme Court has stated that the Benefits Review Board is not a policymaking agency and therefore its interpretations of the LHWCA are entitled to no special deference from the Courts of Appeals." Our statement in Kemp otherwise, therefore, should not be followed.
 
 
 23
 Third, I note that the Director's proposed interpretation makes no effort to give meaning to every word of the statute sub judice. The statute provides:
 
 
 24
 (a) Attorney's fee; successful prosecution of claim
 
 
 25
 If the employer or carrier declines to pay any compensation on or before the thirtieth day after receiving written notice of a claim for compensation having been filed from the deputy commissioner, on the ground that there is no liability for compensation within the provisions of this chapter, and the person seeking benefits shall thereafter have utilized the services of an attorney at law in the successful prosecution of his claim, there shall be awarded, in addition to the award of compensation, in a compensation order, a reasonable attorney's fee against the employer or carrier in an amount approved by the deputy commissioner, Board, or court, as the case may be....
 
 
 26
 33 U.S.C. § 928(a) (emphasis added). This provision is incorporated into the Black Lung Benefits Act by 30 U.S.C. § 932(a), and implemented by 20 C.F.R. § 725.367(a).[2]
 
 
 27
 For eighteen years, the Benefits Review Board construed the statutory scheme to limit an employer's liability for attorney's fees to those incurred after the employer received notice of the claim and disputed it. See, e.g., Jones, 11 Ben. Rev. Bd. Serv. (MB) at 13-14 (1979). This interpretation was primarily based upon the use of the term "thereafter" in the statute and regulation: because both provide that the employer must pay for the claimant's attorney's fee only if the employer declines to pay benefits within 30 days of receiving notice "and the person seeking benefits shall thereafter have utilized the services of an attorney" in the successful pursuit of his claim, the Board held that the term "reasonable attorney's fee" referred to the fee for the work performed after the employer disputed its liability. See Jackson v. Jewell Ridge Coal Corp., BRB No. 93-0927 BLA, slip op. at 5 (Benefits Review Board June 30, 1997).
 
 
 28
 This perhaps is the most straightforward reading of the statute. However, that is not the only plain language interpretation of the statute. In the instant case, the Board took the position that the requirement that a person seeking benefits "shall thereafter have utilized the services of an attorney" was merely one condition in a list of conditions that, if fulfilled, "trigger the liability of the employer for a reasonable fee for all services rendered in the successful prosecution of the claim, not only for the services rendered after the date of notice of the claim and declination to pay." Id. So long as the employer or carrier failed to pay within 30 days of notice, and the claimant thereafter sought an attorney, then the employer would be liable for the entirety of the claimant's reasonable attorney's fee.
 
 
 29
 The Board's recent position is a fair interpretation of the plain language of the statute and regulation. However, it may not be the best interpretation because it effectively reads the term "thereafter" out of the statute.[3] In interpreting a statute, we should strive to give effect to every word that Congress has used. See Connecticut Dep't of Income Maintenance v. Heckler, 471 U.S. 524, 530 n. 15, 105 S.Ct. 2210, 85 L.Ed.2d 577 (1985).
 
 
 30
 The petitioners argue that the Director's proposed compromise interpretation, which this Court adopts today, does not conform with the plain language of the statute. They assert that it neither gives effect to the word "thereafter" nor ignores it, instead interpreting it to mean "there after if the OWCP has determined that the claimant was eligible for benefits, but at any time after the OWCP finds no eligibility."
 
 
 31
 The Director's interpretation may be reconciled with the language of the statute, however. An OWCP denial of benefits, from the moment it is made, will inevitably lead to a controversion by the employer. The controversion is effectively automatic. Hence, nunc pro tunc, the OWCP denial is the moment of time when the employer's controversion truly occurs, and from which the term "thereafter" is measured. Such an interpretation comports with Congress's "overriding purpose" that a claimant's benefits not be diminished by his need to pay attorney's fees. See Director, OWCP v. Simmons, 706 F.2d 481, 485 (4th Cir.1983).
 
 
 32
 Fourth, there is a real conflict between the Director's interpretation and the Secretary of Labor's proposed amendment to 20 C.F.R. 725.367. See 62 Fed.Reg. 3338, 3399 (1997). In explaining her proposed amendments, the Secretary of Labor makes clear that she believes that an employer is not liable for attorney's fees arising from service provided before the employer controverted the claim.[4] Because the Secretary is authorized to prescribe regulations implementing the Black Lung Benefits Act, see 30 U.S.C. § 932(a), we defer to her interpretations of those regulations. See Pauley v. BethEnergy Mines, Inc., 501 U.S. 680, 696-97, 111 S.Ct. 2524, 115 L.Ed.2d 604 (1991); Mullins Coal Co. v. Director, OWCP, 484 U.S. 135, 159, 108 S.Ct. 427, 98 L.Ed.2d 450 (1987).
 
 
 33
 Despite the Director's opposite characterization, the Secretary's proposal is explicit in that it is intended to clarify, and not to change, the pre-controversion fees rule. See 62 Fed.Reg. 3338, 3348, 3354 (1997) (noting that the relevant revisions to 20 C.F.R. § 725.367 "merely clarify the Department [of Labor]'s interpretation of the current Act [Black Lung Benefits Act] and regulations"). It is difficult to understand how the Secretary can take that clear position in the proposed regulations, and yet allow the Director to appear in this court and advocate for a contrary interpretation. Nevertheless, the proposed regulation has not yet been adopted, so I do not find it to be dispositive.
 
 
 34
 For these four reasons I have found it difficult to concur in the decision to adopt the Director's interpretation. But substantial deference is owed to the Director, and his interpretation is truly "a reasonable and commonsense interpretation of an ambiguous fee-shifting scheme," majority op. at 6. I therefore concur in the judgment of the court.
 
 
 
 *
 The Secretary of Labor has delegated to the Director, Office of Workers' Compensation Programs, responsibility for the administration of the black lung program. 20 C.F.R. § 701.202(f). For ease of reference, this opinion will ascribe the government's argument to the Director, who represents the interests of both the Department of Labor and, in this case, the Claimants
 
 
 [1]
 We cited F.E.C. v. Democratic Senatorial Campaign Comm., 454 U.S. 27, 39, 102 S.Ct. 38, 70 L.Ed.2d 23 (1981), for that proposition. That case noted that the F.E.C. was precisely the type of agency to which deference should be afforded because it had policymaking authority. See id. at 37, 102 S.Ct. 38. The case provides no support for the proposition that we should defer to the Benefits Review Board, however, because the Board has no such authority
 
 
 [2]
 Although the regulation is phrased slightly differently, it is substantially identical to 33 U.S.C. § 928(a) for purposes of this case. The regulation reads:
 Payment of a claimant's attorney's fee by responsible operator.
 (a) If an operator declines to pay any benefits on or before the 30th day after receiving written notice of its liability for a claim on the ground that there is no liability for benefits within the provisions of the Act, and the person seeking benefits shall thereafter have utilized the services of an attorney in the successful prosecution of the claim, there shall be awarded, in addition to the award of benefits, in an order, a reasonable attorney's fee against the operator or carrier in an amount approved by the deputy commission, administrative law judge, Board, or court as the case may be....
 
 
 [20]
 C.F.R. § 725.367(a). I will therefore refer to 33 U.S.C. § 928(a), as incorporated by 30 U.S.C.A. § 932(a), and the parallel regulation 20 C.F.R. § 725.367(a), collectively, as "the statutory scheme."
 
 
 [3]
 The interpretation does not entirely ignore the term "thereafter;" presumably, if the claimant utilized the services of an attorney before controversion but not thereafter and then successfully prosecuted his claim pro se, the Board would not require the employer to pay precontroversion fees. Such a holding makes little sense, but the situation is unlikely to arise
 
 
 [4]
 The Secretary is interpreting the regulation, 20 C.F.R. § 725.367, whereas the Director is interpreting the LHWCA provision, 33 U.S.C. § 928(a), as incorporated by 30 U.S.C. § 932(a), and implemented by 20 C.F.R. 725.367. However, since the language in the LHWCA provision and the black lung regulation is substantially identical, and because both the Secretary and Director intend their interpretation to apply to all black lung cases, the conflicting interpretations involve the same statutory scheme